ROSLOWSKI *v.* SZTABA.

Pledges—Payment—Assignments—Mortgages.

> Debtors' contention that their assignment of their vendee inter-
> est in land contract and bill of sale of personal property was
> given to creditors as security only and not in payment of debt,
> *held,* not established by evidence.

Appeal from Macomb; Reid (Neil E.), J. Sub-
mitted April 14, 1931. (Docket No. 87, Calendar
No. 34,293.) Decided June 1, 1931.

Bill by Ludwick Roslowski and another against
Rafal Sztaba and another for an accounting, to de-
clare an interest in property, and for other relief.
Decree for plaintiffs. Defendants appeal. Re-
versed, and bill dismissed.

*Anthony Nelson,* for appellants.

North, J. Defendants have appealed from a
decree granting plaintiffs relief prayed in a contro-
versy arising out of the following facts and circum-
stances: On and prior to November 29, 1921, plain-
tiffs were the holders of a vendee interest in farm
property located in Macomb county. On that date
and in consideration of a loan, plaintiffs gave their
promissory note to defendants for $2,900 payable
one year from date. On March 31, 1922, plaintiffs
gave defendants another note for $490, payable in
eight months. Payment was secured by the assign-
ment to defendants of plaintiffs' vendee interest in
the farm property. Neither of these obligations was

paid. On December 12, 1922, in an effort to adjust their matters, the parties met in an attorney's office in Mt. Clemens. This litigation arises out of their disagreement as to the nature of the transaction then and there consummated. It is defendants' claim that plaintiffs desired to dispose of their interest in the farm property and to pay their indebtedness to defendants; that an agreement was reached whereby plaintiffs made another assignment of their vendee interest in the farm property to defendants and also gave defendants a bill of sale of the personal property on the farm in consideration of defendants canceling plaintiffs' indebtedness and for the further consideration of $1,000, $200 of which was paid by defendants to plaintiffs in cash and payment of the remaining $800 was secured by a chattel mortgage on the farm stock and equipment. Defendants assert that consummation of this transaction in this manner vested them with the absolute ownership of the vendees' interest in the land contract and of the personal property subject to plaintiffs' chattel mortgage.

On the other hand plaintiffs assert the arrangement above outlined, in connection with which possession of the property was delivered to defendants, was consummated only as a means to further secure payment of plaintiffs' indebtedness to defendants, and it was understood between the parties at the time that upon payment of plaintiffs' indebtedness their property would be restored to them. Plaintiffs assert that they were unskilled in business matters, that they were without funds, and were induced to make this arrangement because of defendants' threat to institute an attachment proceeding and to take plaintiffs' property from them. As noted above, the trial court accepted plaintiffs' construc-

tion and construed the transaction of December 12, 1922, as resulting in an "equitable" mortgage covering plaintiffs' property and securing payment of their indebtedness to defendants, and decreed the amount of such indebtedness to be $10,309.89. This included payments made on the contract by defendants, taxes, etc. Payment was ordered and in case of nonpayment right of sale on foreclosure was decreed to defendants.

A thorough consideration of the record has forced us to accept defendants' contention. There is a sharp conflict in the testimony on this phase of the case, but with the exception of some rather limited testimony of admissions against interest claimed to have been made by the defendants, the testimony of the plaintiff Roslowski, which is conflicting in itself, stands practically uncorroborated. In support of the contrary claim of the defendants, the following facts appearing from the record may be noted:

(a) The assignment of plaintiffs' vendee interest, hereinafter quoted, is an unconditional assignment.

(b) The bill of sale of the personal property on the farm from plaintiffs to defendants is also absolute and unconditional.

(c) To secure the payment of the balance of $800 due to plaintiffs from defendants incident to this transaction, the latter took a note for one year bearing six per cent. interest from defendants, payment being secured by a chattel mortgage covering personal property on the farm.

(d) Immediately after this $800 note fell due, plaintiffs instituted proceedings to foreclose the chattel mortgage.

(e) Immediately after the transaction of December 12, 1922, plaintiffs delivered possession of the farm and the personal property to defendants who

have continued in such possession. Some of plaintiffs' personal property was not wholly paid for when turned over to defendants, but the latter seem to have taken the property subject to the indebtedness and subsequently paid the same. .

(f) Defendants have made all payments on the land contract since the assignment and also all taxes on the property. Prior to the transaction of December 12th, defendants had been given an assignment of plaintiffs' vendee interest in the land contract to secure payment of previous loans from defendants to plaintiffs. This unquestionably was a conditional assignment. It was destroyed by the attorney at the time of the transaction of December 12th. This attorney represented both parties, . and it is difficult to understand why he would destroy the former assignment of plaintiffs' vendee interest and prepare a second one unless the second assignment was of a different character and for a different purpose.

(g) It is also difficult to understand why the attorney, if the transaction was of the character asserted by the plaintiffs, made no mention of that fact in any of the instruments executed by the parties, nor did he prepare and have executed for plaintiffs' protection an instrument signed by defendants setting forth plaintiffs' right (if such there was) to reconveyance or reassignment of the property upon payment of certain sums or certain items to defendants.

(h) Defendants have not only kept up payments on the contract and also taxes; but in the meantime (and apparently with plaintiffs' knowledge) have made permanent improvements upon the property among which was the bringing under cultivation of about 30 acres of farm land which theretofore was unproductive.

(i) At the time of this transaction plaintiffs had first attempted to secure for their interest the payment of $2,000 by defendants. There was consider-

able negotiation between the parties, plaintiffs reducing the offer to $1,500, $1,300, then $1,200 and finally to $1,000, which was accepted by defendants. This $1,000, together with the indebtedness against the property, seems to have been a fair consideration therefor.    But local improvements together with a general rise in property values resulted in a rapid increase in the value of this property during the years 1923 and 1924. Plaintiffs' bill was not filed until May 27, 1925, notwithstanding they had been aware that defendants claimed to be the absolute owners of this property since some time in 1923.

We forego noting other like aspects of the record. The testimony of Mr. and Mrs. Sztaba that the property was unconditionally sold to them is not only corroborated by that of their son Anthony, but also by that of Frank Mackowiecki and Frank Godyana, who were disinterested witnesses.    The attorney who represented all the parties in the transaction of December 12, 1922, testified that he had no recollection of the details beyond those in the papers prepared at the time.    From the agreement of December 12, 1922, executed by both plaintiffs and defendants, we quote the following:

"And the said second parties desiring to pay up the indebtedness evidenced by the notes above mentioned, have this day assigned all of their right, title and interest in and to the property above described and to the land contract above stated, together with the advantages to be derived therefrom.    And the said second parties have this day given to the said first parties a bill of sale of all stock, tools, farm implements, and produce, all crops planted and growing, all the goods and chattels now on the farm premises in said township of Sterling, Macomb county, Michigan, for the sum of $1,000, payable as follows: $200 on this date, receipt of which is

hereby acknowledged and the balance of $800 payable one year from date with interest at 6 per cent. per annum, according to the terms of a certain promissory note bearing even date herewith and secured by a chattel mortgage on all of the stock hereby bargained and sold to the said first parties by the bill of sale as above stated.''

There can be no particular advantage in reducing transactions to written agreements if on slight pretext and with uncertain showing the terms of such written instruments are to be wholly disregarded by the parties and set aside by courts. For the reasons above indicated, we find that plaintiffs are not entitled to the relief prayed. A decree may be taken dismissing the bill of complaint, with costs of both courts.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.